**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| VANESSA McCANTS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 13-00393-KD-M |
| | ) | |
| METAL SERVICES LLC d/b/a | ) | |
| PHOENIX SERVICES LLC/ | ) | |
| THYSSENKRUPP INPLANT | ) | |
| SERVICES, LLC, | ) | |
| Defendant. | ) | |

**ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 19), Plaintiff's Response (Doc. 29), and Defendant's Reply (Doc. 32). Upon due consideration of the parties' briefs and evidentiary submissions (Docs. 20, 21-1 to 21-7, 29, 30-1 to 30-14, and 32), Defendants' motion is due to be **GRANTED** in part and **DENIED** in part.

## I.    Procedural History

On July 31, 2013, Plaintiff Vanessa McCants ("McCants") commenced this action by filing a complaint against Metal Services, LLC d/b/a Phoenix Services, LLC/ThyssenKrupp Inplant Services, LLC ("Metal Services") alleging that the Defendant discriminated against her on the basis of race, in violation of 42 U.S.C. § 2000e *et seq*. (Title VII) and 42 U.S.C. § 1981 (§ 1981). (Doc. 1). Metal Services answered the complaint on September 30, 2013 (Doc. 5). On August 22, 2014, after the close of discovery, Metal Services moved for summary judgment as to all claims. (Doc. 19). Plaintiff's response and Defendant's reply were timely filed, and the motion is now ripe for consideration.

## II.    Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.

R. CIV. P. 56(a) (Dec. 2010). Rule 56(c) provides as follows:

> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> *(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
>
> *(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c) (Dec. 2010). The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In

reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.    Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992) (internal citations and quotations omitted).

## III.    Factual Background[1]

McCants is an African-American female who was previously employed by Defendant Metal Services LLC. (Doc. 1 at 2; Doc. 5 at 2). Metal Services LLC is a Delaware limited liability company that does business and employs personnel in Mobile County, Alabama and employs at least (15) employees. (Doc. 5 at 2-3).    In 2009, Metal Services' predecessor, ThyssenKrupp InPlant Services (TKIPS) and Phoenix Services formed a start up joint venture to provide mill services to ThyssenKrupp Stainless and ThyssenKrupp Steel in Calvert, Alabama. (Doc. 20-1 at 6-7 (Dep. Hamilton at 30-31, 34); Doc. 31 at 1). The joint venture was named TKIPS and its operations began in late 2010. (Doc. 21-1 at 7 (Dep. Hamilton at 34-35)). In January 2012, Phoenix Services, LLC acquired all shares of TKIPS and the name of the business changed to Metal Services LLC d/b/a Phoenix Services. (Doc. 21-1 at 11 (Dep. Hamilton at 53-54)); (Doc 21-3 at 40 (Dep. Faircloth at 167)).

In November 2009, McCants began working for TK Stainless as a contract recruiter on a temporary basis. (Doc. 21-4 at 12-13 (Dep. McCants at 59-62)) In late 2009, she learned of another similar position with TKIPS. (Doc. 30-1 at 24-25 (Dep. McCants at 63-64)). Shortly

---

1  At the summary judgment stage, the facts are taken in the light most favorable to the non-movant. Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998–999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

after learning of the position, she interviewed with TKIPS Site Manager Christian Koesling, who offered her a part time position as a start up HR manager. (Doc 30-1 at 24-28 (Dep. McCants 63-67)). McCants began in this position sometime around January 2010, splitting her time between TK Stainless and TKIPS. (Doc. 21-1 at 12, 14-15, 16 (Dep. McCants at 60, 67, 69-70, 75)).

On April 30, 2010, McCants applied for a full time position as human resources office administration manager for TKIPS. (Doc. 30-1 at 33, (Dep. McCants at 74)). On May 1, 2010, after being hired by Koesling, she began working in this position. (Id. at 34-36, (Dep. McCants 78-80)). During the interview, Koesling told McCants that her salary would be $65,000. (Id. at 35-36, (Dep. McCants 79-80)). There was no written employment contract or written salary agreement. (Id. at 35-36, (Dep. McCants at 79-80)).

Rather than $65,000, McCants was paid at a rate of $39,500 per year. (Doc. 30-1 at 68-70, (Dep. McCants at 150, 153-54)). Beginning on May 19, 2010, and continuing through her resignation on March 18, 2011, McCants made a number of attempts to obtain a higher yearly salary. (Doc. 30-1 at 38-39, (Dep. McCants at 87-88)); (Doc. 30-1 at 40-41, (Dep. McCants at 95-96)). (Doc. 30-1 at 48, (Dep. McCants at 104-10)); (Doc. 30-1 at 70-71, (Dep. McCants at 154-155, 194-210)); (Doc. 30-1 at 83-85, (Dep. McCants at 169-71)); Doc. 30-1 at 86, (Dep. McCants at 175, Doc. 21-5 at 71-73)); Doc. 30-1 at 215-23); (Doc. 30-1 at 89-91, (Dep. McCants at 183-85)); (Doc. 30-1 at 118-19, (Dep. McCants at 254-55)). These communications between McCants, Koesling, and members of the TKIPS board, regarding McCants' desired salary increase occurred via e-mail, telephone, and in person conversations. Despite her efforts, McCants was not successful in obtaining a higher salary and throughout the duration of her

employment, her salary remained $39,500. (Doc. 30-1 at 68-70, (Dep. McCants at 150, 153-54)). McCants also contends she was denied a yearly bonus in 2011. (Doc. 30-1 at 139-41, (Dep. McCants at 288-90).

According to McCants, in August 2010 Koesling told her that a member of the Phoenix board of directors had not wanted to hire her because of her race. (Doc. 30-1 at 74-77, (Dep. McCants at 159-62)). Koesling stated that a Phoenix board member had told him that "they didn't want a black person working in the [human resources] department." (Doc 30-1 at 76-77, (Dep. McCants at 161-62)). Other than the fact that the speaker was a member of the Phoenix board, his identity is unknown. (Doc. 30-1 at 77, (Dep. McCants at 162)).

On March 18, 2011, McCants submitted a letter of resignation to Koesling, indicating that she could no longer work at Metal Services for the salary she was being paid. (Doc. 30-1 at 224). Her last day with TKIPS was March 18, 2011. (Doc. 30-1 at 100, (Dep. McCants at 199)). In June 2011, Dana Faircloth, a Caucasian female was hired by Metal Services. (Doc. 30-3, (Dep. Faircloth at 63, 172-73)). McCants claims that Faircloth replaced her. (Doc. 1 at 4). Faircloth's salary was $65,000. (Doc. 30-3 at 28, (Dep. Faircloth at 62)).

On September 8, 2011, McCants filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). (Doc. 1 at 3; Doc. 5 at 3). On April 16, 2013, the EEOC issued a determination letter. (Doc. 1 at 3; Doc. 5 at 3). On May 7, 2013 the EEOC issued a Notice of Right to Sue letter and McCants filed her complaint within 90 days of its issuance. (Doc. 1 at 3; Doc. 5 at 3). McCants has satisfied the administrative exhaustion requirements of Title VII and there are no administrative exhaustion requirements for § 1981 claims.

On July 31, 2013 McCants sued Metal Services for Title VII/§ 1981 violations for race discrimination. She claims she was constructively discharged and that she was replaced by Dana Faircloth, a Caucasian female, who was paid a higher salary than McCants. (Doc. 1). The relief requested includes a declaratory judgment, a permanent injunction, reinstatement or front pay, back pay with interest, compensatory, punitive, and/or nominal damages, benefits, costs, fees, and expenses. (Doc. 1 at 8).

IV.    **Discussion**

McCants alleges that Metal Services, in violation of both Title VII and § 1981, unlawfully discriminated against her on the basis of race 1) by constructively discharging her, and 2) by replacing McCants with Faircloth and by paying Faircloth a higher salary than McCants received for the same work. (Doc. 1 at 5-7). Title VII prohibits an employer from discriminating against a person based on race. 42 U.S.C. § 2000e-2(a)(1). Likewise, under 42 U.S.C. § 1981, an employee has the right to be free of intentional racial discrimination in the performance of a contract. Because Title VII and Section 1981 have the same requirements of proof, McCants' claims are analyzed under the same framework. Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).

As discussed below, the defendant's motion for summary judgment on the constructive discharge claims is **GRANTED** and its motion for summary judgment on the pay discrimination claims is **DENIED**.

A.    **Constructive Discharge Claims**

McCants alleges discriminatory constructive discharge under Title VII and § 1981. To establish a prima facie case of disparate treatment a plaintiff must show that "'(1) she is a

member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated [white] employees more favorably; and (4) she was qualified to do the job.'" McCann v. Tillman, 526 F.3d 1370, 1373 (11th Cir. 2008) quoting EEOC v. Joe's Stone Crab, Inc. 220 F.3d 1263, 1286 (11th Cir. 2000).

It is undisputed that McCants, an African American female, can establish that she was a member of a protected class. (Doc. 1 at 3; Doc. 5 at 4). The parties also agree that she was qualified for the position. (Doc. 1 at 5-6; Doc. 5 at 5-6). However, McCants cannot establish that she suffered an adverse employment action. Though "[c]onstructive discharge qualifies as an adverse employment decision," Poole v. Country Club of Columbus, Inc., 129 F.3d 551, 553 n. 2 (11th Cir. 1997), the Court finds that McCants fails to provide sufficient facts from which a reasonable jury could find in her favor on her constructive discharge claim.

McCants' complaint alleges "[a]s a result of the ongoing and continuing racial discrimination, Plaintiff was constructively discharged when she could no longer reasonably remain employed with the Defendant." (Doc. 1 at 5-6). A constructive discharge occurs when a discriminatory employer imposes working conditions that are "so intolerable that a reasonable person in [the employee's] position would have been compelled to resign." Poole v. Country Club of Columbus, Inc., 129 F.3d 551, 553 (11th Cir. 1997) (quotation marks and citation omitted). A plaintiff must allege that the employer intentionally rendered the working conditions so intolerable that the employee was compelled to quit involuntarily. Buckley v. Hospital Corporation of America, Inc., 758 F.2d 1525 (11th Cir. 1985).

The record reflects neither that McCants' work conditions were intolerable nor that her resignation was anything other than voluntary. McCants' March 18, 2011 letter of resignation

states:

> I can't take it anymore. I will be looking for other employment, I would love to stay at TKIPS but I've been mistreated too much and too long, the working environment is too stressful. I have worked too hard, I've been at TKIPS from the start-up, 1/1/2010 and I've had nothing but obstacle (sic) thrown at me, my character has been defamed, I (sic) been cheated out of a fair and equable (sic) salary, it's just too much. I would consider returning if:
>
> $60,000 annual salary with an increase up to $65,000 annual effective May 1, 2011
>
> Back pay from November 1, 2010 of the $60,000 annual Salary
>
> Signed letter of Salary

(Doc. 30-1 at 224). McCants' own words, contained in her resignation letter, indicate that she would be willing to stay if her salary were higher. This undermines the existence of intolerable conditions. A resignation will be considered voluntary even where the only alternative to resignation is possible termination for cause, criminal charges, or other unpleasant alternatives because "the fact remains that [the] plaintiff had a choice ... [the plaintiff] could stand pat and fight." Hargray v. City of Hallandale, 57 F.3d 1560, 1568 (11th Cir. 1995)(quoting Christie v. United States, 518 F.2d 584, 587 (Ct. Cl. 1975)). Though McCants may not have been paid the salary she had been expecting, this unpleasant alternative to resignation does not rise to the level of constructive discharge.[2]

A constructive discharge claim is not a jury question "unless a plaintiff produces

---

[2] The court has also considered McCants' version of events occurring January 19, 2011 and described in her letter dated January 24, 2011 (Doc. 30-1 at 216-17) and has determined that Lane's behavior on a phone call with McCants and Koesling does not rise to the level of creating working conditions that were "so intolerable that a reasonable person in her position would have been compelled to resign." Poole at 553. McCants has pointed to no other evidence that would indicate that the workplace was intolerable. The court finds that the events of January 19, 2011, even combined with McCants' inability to obtain a higher salary and lack of bonus do not support a finding of constructive discharge.

substantial evidence that conditions were intolerable." <u>Brochu v. City of Riviera Beach</u>, 304 F.3d 1144, 1155 (11th Cir. 2002). In assessing constructive discharge claims, the court does not consider a plaintiff's subjective feelings about his employer's actions, but whether a reasonable person in the plaintiff's position would be compelled to resign. <u>Doe v. Dekalb Cnty. Sch. Dist.</u>, 145 F.3d 1441, 1450 (11th Cir. 1998). In this case, McCants has failed to present substantial evidence showing that working conditions were intolerable, thus she fails to make an adequate claim for constructive discharge.   Metal Services' motion for summary judgment as it pertains to constructive discharge is **GRANTED**.

### B.    Pay Discrimination Claims

McCants claims that, based on her race, she was paid less than a similarly situated employee, Faircloth, who McCants claims replaced her. "A plaintiff establishes a prima facie case of pay discrimination by demonstrating that: (1) she was a member of a protected class; (2) she received low wages; (3) similarly situated employees outside the protected class received higher pay; and (4) she was qualified to receive the higher pay." <u>Gray v. City of Jacksonville, Fla.</u>, 492 F. App'x 1, 4 (11th Cir. 2012) <u>cert. denied,</u> 134 S. Ct. 84, (2013) citing <u>Cooper v. Southern Co.</u>, 390 F.3d 695, 735 (11th Cir. 2004), <u>overruled on other grounds</u>, <u>Ash v. Tyson Foods, Inc.</u>, 546 U.S. 454, 457 (2006). The parties do not dispute that McCants is a member of a protected class (Doc. 1 at 3; Doc. 5 at 4), however, the remaining elements of McCants' prima facie case raise issues of fact rendering this claim inappropriate for summary judgment.

As the primary evidence that this decision was based on unlawful race discrimination, McCants points to the statement of an unidentified TKIPS board member made to Koesling and repeated to McCants. (Doc. 29 at 9).   Specifically, in August 2010, Koesling told McCants that

a Phoenix board member told him "they didn't want a black person working in the [human resources] department." (Doc 30-1 at 76-77, (Dep. McCants at 161-62)). In its reply to McCants' response to the motion for summary judgment, Metal Services argues that McCants' testimony regarding a statement made by a TKIPS board member and relayed to her by Koesling constitute double hearsay and should be excluded from evidence. (Doc. 32 at 2-5).

"The general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment." Macuba v. DeBoer, 193 F.3d 1316, 1322 (11th Cir. 1999)(citation and internal quotation and footnote omitted). Hearsay is a statement made by someone other than the declarant, offered to prove the truth of the matter asserted. See Fed. R. Evid. 801(c). The Federal Rules of Evidence provide that a statement is not hearsay if:

> the statement is offered against a party and is (A) the party's own statement in either an individual or a representative capacity, or ... (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship.

Fed. R. Evid. 801(d)(2). Thus, statements by Koesling in performance of his job, offered by McCants against Metal Services, are generally not hearsay. Though Koesling's statement to McCants is not hearsay, the statement by a board member to Koesling must still meet an exception or be nonhearsay in order to be admissible. Under Zaben v. Air Products & Chemicals, Inc., 129 F.3d 1453 (11th Cir. 1997), "double hearsay can be admissible if 'both halves' of the double hearsay are admissible." Frierson v. Atlanta Independent School System, 1:10-CV-3826-ODE-LTW, 2014 WL 2119576 (N.D. Ga. Mar. 31, 2014). "Zaben imposed numerous restrictions including, but not limited to, the requirement that *both* declarants be

supervisors/higher-ups in the company." Id. (emphasis in original). Because a member of the board of directors is exactly this type of declarant, as is Koesling, both statements are admissible. Kidd v. Mando American Corp., 731 F.3d 1196, 1207 (11th Cir. 2013). ("[I]f [the plaintiff] were able to show by 'a preponderance of the evidence that [the manager] was speaking as an agent of [the corporation] at the time he made [this] statement[ ],' it would be admissible.")(quoting Rowell v. BellSouth Corp., 433 F.3d 794, 800 (11th Cir. 2005).

Defendants also point out that the speaker is unknown. Though the identity of the board member may be unknown, there is a small number of people to whom the comment could be attributed, as McCants has stated that it was one of the members of the Phoenix board of directors. (Doc. 30-1 at 77, (Dep. McCants at 162)). Here, McCants has provided sufficient evidence to conclude that the board member speaker alleged to have made the statement is an agent of Metal Services for the purpose of making an admission within the context of Fed. R. Evid. 801(d)(2). See Davis v. Mobil Oil Exploration & Producing Se., Inc., 864 F.2d 1171, 1174 (5th Cir. 1989)("[T]he inquiry for this Court becomes whether enough evidence was presented to support a conclusion by the district court that a certain unidentified person was in fact the agent of Mobil so that any admissions made by that person constituted the admissions of Mobil for purposes of Rule 801(d)(2)(D).")

Upon review of the submissions, it is clear that a factual dispute exists regarding whether McCants has been subject to pay discrimination. Specifically whether McCants was replaced by Dana Faircloth (a Caucasian female who was paid a significantly higher salary), and whether this pay differential was based on race are factual disputes to be resolved by the jury. Accordingly, the Defendant's motion for summary judgment as to McCants' pay discrimination claim is

**DENIED.**

IV.     <u>**Conclusion**</u>

For all the foregoing reasons, defendant Metal Services' Motion for Summary Judgment (Doc. 19) is **GRANTED** as to McCants' constructive discharge claims and **DENIED** as to McCants' discriminatory pay claims.

**DONE** and **ORDERED** this the **28th** day of **October 2014.**

<u>/s/ Kristi K. DuBose</u>
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**